**FIRST WESTERN GOVERNMENT SECURITIES, INC., et al., Plaintiffs-Appellants,**

v.

**UNITED STATES of America, et al., Defendants-Appellees.**

No. 84–1194.

United States Court of Appeals, Tenth Circuit.

July 11, 1986.

Stanley L. Drexler and Benjamin Spitzer (Richard J. Sideman, Robert L. Leberman, Cheryl G. Weisbard and Ellen I. Kahn, Sideman & Bancroft, San Francisco, Cal., on briefs), Drexler & Wald, Denver, Colo., for plaintiffs-appellants.

William Whitledge (Glenn L. Archer, Jr., Michael L. Paup and Richard W. Perkins, U.S. Dept. of Justice, Washington, D.C. and Robert N. Miller, U.S. Atty., Denver, Colo., with him on brief), U.S. Department of Justice, Washington, D.C., for defendants-appellees.

Before LOGAN and BALDOCK, Circuit Judges, and SAFFELS, District Judge.*

SAFFELS, District Judge.

Plaintiffs in this action brought suit pursuant to 26 U.S.C. §§ 7217 and 7431 [1] seeking money damages against the United States and nine agents of the Internal Revenue Service [hereinafter IRS] for the alleged improper and bad faith disclosure of confidential tax return information in violation of 26 U.S.C. § 6103. The District Court in an order filed on January 10, 1984, 578 F.Supp. 212, dismissed plaintiffs' complaint against defendants Merlo, Beck, Cottinghim, Geisler, and DeLaPena for lack of personal jurisdiction. The court granted summary judgment for the remaining defendants on the grounds that plaintiffs' return information was not implicated in the revised Revenue Agent's Report [hereinafter RAR] and further that disclosure was warranted under either 26 U.S.C. § 6103(h)(4) or 26 U.S.C. § 6103(e).

On appeal, plaintiffs argue that their return information was disclosed, that the exceptions of section 6103 are inapplicable and that the court granted summary judgment when genuine issues of material fact remain. Plaintiffs further argue that the court erred in dismissing for lack of personal jurisdiction because 28 U.S.C. § 1391(e) authorizes jurisdiction in this instance and also jurisdiction is proper pursuant to the Colorado long arm statute.

When reviewing an order of summary judgment, this court must examine the record to determine whether any genuine issue of material fact pertinent to the ruling remains, and if not, whether the substantive law was correctly applied. *Western Casualty & Surety v. National Union Fire Insurance*, 677 F.2d 789 (10th Cir. 1982). "We do not examine the trial court's rulings under the 'clearly erroneous' standard of Rule 52, Fed.R.Civ.P., but instead apply the strict standard of Rule 56...." *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1377 (10th Cir.1980). Under Rule 56, the movant must demonstrate beyond doubt that he is entitled to a favorable ruling. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027 (10th Cir. 1978). Pleadings and documentary evidence are to be construed liberally in favor of a party opposing a Rule 56 motion. *Harman v. Diversified Medical Investment Corp.*, 488 F.2d 111 (10th Cir.1973), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976). We have carefully reviewed the record and find the judgment of the District Court should be affirmed.

The facts surrounding this dispute are as follows. First Western is a broker/dealer in government securities and Sidney Samuels is its president. Samuels is also president of Samuels, Kramer and Co. Both corporate plaintiffs have been identified by the IRS as promoters of abusive tax shelters. In 1980, the Examination Division of the Office of the District Director of the IRS in Dallas, Texas, conducted an examination of twenty-five of plaintiff's customers. Seventy-five IRS summonses calling for testimony and for the production of corporate records were served on the plaintiff Samuels. After refusal to comply, the summonses were ordered enforced in an action in the United States District Court for the Northern District of California. *See United States v. Samuels, Kramer and Co., et al.*, No. C–81–1672–WHO (N.D.

---

* Of the United States District Court for the District of Kansas, sitting by designation.

1. Until September 3, 1982, Section 7217 created liability for unauthorized tax disclosures by any person required by Section 6103 to maintain the confidentiality of such information. Section 7217 was repealed in 1982, P.L. 97–248 and renumbered as Section 7431. Section 7431 substituted the United States as a defendant in place of individual Internal Revenue Service officers. Section 7217, although repealed, is effective for disclosures made prior to September 3, 1982.

Calif. April 27, 1981). Thereafter, at a scheduled deposition, plaintiff Samuels invoked the fifth amendment 135 times. An earlier RAR explaining to taxpayers why their deductions were being disallowed was revised to include mention of Mr. Samuels' invocation of the fifth amendment. After this revision, the RAR was sent to the Denver, Colorado, district of the IRS in December of 1981. Thereafter, the RAR's were disclosed to plaintiffs' customers residing in Denver. Plaintiffs contend this disclosure was impermissible because it contained confidential return information and further that the disclosure was in bad faith and for the purpose of harassing and damaging plaintiffs' business operations.

Section 6103(a) of the Internal Revenue Code, 26 U.S.C. § 6103(a), states the general rule that returns and return information shall be confidential and may not be disclosed by officers and employees of the United States or other certain individuals who have access to this information "except as authorized by this Title." Return information is defined in section 6103(b)(2) as follows:

(2) *Return Information.* The term "return information" means—

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and

(B) any part of any written determination or any background file document relating to such written determination ... which is not open to public inspection under section 6110,

but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer. . . .

The District Court found that the information disclosed in the RAR was gained through audits of the investors themselves and therefore was not return information of the plaintiffs. The court further found the disclosure of the information to the investors to be allowable pursuant to 26 U.S.C. § 6103(h)(4)(C) and § 6103(e). We agree.

Other courts have discussed what constitutes return information. The Ninth Circuit Court of Appeals in *Long v. United States Internal Revenue Service*, 596 F.2d 362 (9th Cir.1979), *cert. den.*, 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980), found that return information does not include data in a form which cannot be associated with or otherwise identify, directly or indirectly, a particular taxpayer. The court therein allowed the disclosure of computer data tapes and check sheets used in compiling statistical studies in the taxpayer compliance measurement program provided that taxpayer names, addresses, and social security numbers were deleted. *See also Neufeld v. Internal Revenue Service*, 646 F.2d 661 (D.C.Cir.1981) (adopting the *Long* definition of return information but cautioning that mere deletion of names and addresses does not always eliminate items as return information.)

Return information requires some nexus between the data or information obtained and the furtherance of obligations controlled by Title 26. *In re Grand Jury Investigation*, 688 F.2d 1068 (6th Cir.1982), *reh. denied*, 696 F.2d 449 (1982). Section 6103(b)(2)(A) specifically provides that the disclosure of a taxpayer's name and the fact that he is or will be subject to a tax investigation constitutes return information.

In *Mid-South Music v. United States Department of the Treasury*, 579 F.Supp. 481 (M.D.Tenn.1983), *aff'd in part, rev'd in part*, 756 F.2d 23 (6th Cir.1984), the

plaintiff brought suit against the United States and Internal Revenue Service officials alleging in part that defendants disclosed plaintiff's return information in violation of section 6103(a). The district court concluded that the letters sent to taxpayers informing them that claiming certain deductions on their tax return would result in an examination, did not amount to disclosure of the plaintiff's return information. The district court reasoned that the letters merely identified the plaintiff and particularized the deductions with which the IRS was concerned without any indication that plaintiff's name was derived by the IRS from its tax return. On appeal, the Sixth Circuit Court of Appeals reversed the district court on the basis that plaintiff's complaint, when construed favorably, asserted that the notice revealed its identity as a taxpayer and that it had been under investigation by the IRS, since the investor's names were allegedly obtained through such investigation.

On remand, the district court tried the case and held for the taxpayer. *Mid-South Music Corp. v. U.S.*, 85-2 U.S. Tax Cas. (CCH) ¶ 9782 at 90, 151 (M.D.Tenn.1985), *appeal pending*, No. 85–6073 (6th Cir., filed 11/27/85). The district court reasoned that the information concerning the tax shelter was obtained from the plaintiff's tax return and the IRS acted in bad faith for the intended purpose of destroying plaintiff's tax shelter promotion prior to its abusiveness being established as a matter of law. Looking at the letter sent to the taxpayers, the district court found that the wording of the letter necessarily implied that the information was obtained through a tax investigation of the plaintiff.[2] The district court further found the disclosures to be in bad faith.

▇ In the case at bar, the revised RAR included information pertaining to Mr.

Samuel's invocation of the fifth amendment regarding his company's operations. The information contained within the RAR in no way mentioned that plaintiffs are or were being subject to a tax investigation. Even construing plaintiff's allegations favorably, we cannot conclude that mention of Mr. Samuels invocation of the fifth amendment amounted to return information. He was called upon as a third party to provide information concerning an investigation of his customers in Dallas. Sections 6103 and 7217 were enacted to protect a taxpayer's reasonable expectation of privacy. *See* S.Rep. No. 94–938, 94th Cong., 2d Sess. at 348, *reprinted in* 1976, U.S.Code Cong. & Admin.News 2897, 3778. These sections cannot be read to provide a general right of privacy to anyone called upon to submit information to the IRS.[3] Nor can we conclude that material factual issues remain which would preclude resolution of this claim by summary judgment. It is undisputed that Mr. Samuels invoked the fifth amendment during the tax investigation of First Western investors. The fact that plaintiffs were also under audit at that time does not controvert this fact. Although the agent assigned to plaintiffs' audit was present prior to the taking of Mr. Samuels' deposition, he did not remain during the taking of the deposition. In any event, his presence does not raise a genuine issue of material fact.

The information contained within the revised RAR was generated during the audits of First Western investors and relates to the tax liabilities of the investor-taxpayers. It was not gathered during the audits of the plaintiffs. Further, nothing contained within the revised RAR disclosed plaintiffs' names in the context that they were, would be, or are being investigated for tax purposes. As there are no material

---

**2.** The pertinent paragraph states: "Our information indicates that you invested in the above-named tax shelter in 1982. Based upon our review of that promotion, the indications are that the purported tax deductions are not allowable."

**3.** The court bases its reasoning on the conclusion that Mr. Samuels' testimony was not return information of the plaintiffs. The court is not finding the information to be disclosable solely because it was brought out in the course of a public proceeding. *See Rodgers v. Hyatt,* 697 F.2d 899 (10th Cir.1983).

facts surrounding this issue, the district court was correct in granting summary judgment for defendants.

Even if the court were to conclude that the information contained within the revised RAR constituted return information of the plaintiffs, such information would still be disclosable pursuant to 26 U.S.C. § 6103(h)(4)(C). That section provides:

> Disclosure in judicial and administrative tax proceedings. A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only—
>
> .    .    .    .    .
>
> (C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding; ...

The district court found an audit to be an administrative proceeding relating to tax administration and further found the investors to be parties to the audit. The district court concluded that the disclosed information clearly related to a transactional relationship between the investors to whom the RAR was disclosed and the plaintiffs which directly affects the resolution of the proceeding. The district court correctly noted that section 6103(h)(4)(C) does not require that the disclosure be necessary to the resolution of the proceeding, but only that it directly affect the resolution of an issue in the proceeding.

Appellants urge this court to adopt the reasoning in *Chamberlain v. Kurtz,* 589 F.2d 827 (5th Cir.1979), *cert. den.,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979), in which the court considered a Freedom of Information Act suit brought by a taxpayer to compel production of records contained within a criminal file where the documents were withheld from disclosure on the grounds that such disclosure would seriously impair federal tax administration. The court concluded that subsection (h)(4) merely describes the circumstances in which disclosure is allowed to federal offi-

cials for purposes of tax administration. The court based its reasoning on the statute's legislative history.

█ We have carefully reviewed the statute and its surrounding history and cannot conclude that its application is limited to disclosure only to federal officials. While 26 U.S.C. § 6103(h)(1), (2) and (3) speak specifically in terms of disclosure to officers of the Department of Treasury and the Department of Justice, section 6103(h)(4) speaks in terms of disclosure in judicial and administrative tax proceedings. There is no indication within the legislative history that section 6103(h)(4)(C) was to be limited only to disclosure to certain federal employees. Rather, it appears the intent of section 6103(h)(4)(C) was to allow disclosure in judicial or administrative tax proceedings in general, provided that the requirements of the various subsections are met.

In *Davidson v. Brady,* 559 F.Supp. 456 (W.D.Mich.1983), *aff'd,* 732 F.2d 552 (6th Cir.1984), the district court found a disclosure of plaintiffs' "Statement of Financial Credit" to one Edward Solomon and his attorney to be authorized under section 6103(h)(4)(C). The district court reasoned that the information within the statement was directly related to a transactional relationship between the parties and further, the criminal proceeding against Solomon was a federal judicial proceeding relating to tax administration. Implicitly, the court did not limit section 6103(h)(4)(C) to disclosure only to certain federal employees.

█ Further, in the instant case the court finds that the audit falls within the definition of a proceeding pertaining to tax administration. The term "tax administration" is to be interpreted broadly. *See Davidson,* 559 F.Supp. at 460–61. Likewise, the information is directly related to a transactional relationship between the investors and plaintiffs and directly affected the resolution of an issue in the proceeding, that being the disallowance of deductions related to plaintiffs' tax shelters. The fact that the IRS had previously decided to dis-

allow the deductions in question does not prevent the inclusion of Mr. Samuels' invocation of the fifth amendment within the RAR from directly affecting the resolution of an issue in the proceeding. The IRS is required to provide a taxpayer with an examiner's report. *See* 26 C.F.R. § 601.-105. The IRS necessarily is authorized to report all pertinent information to buttress its conclusions provided such information directly affects the resolution of an issue in the proceeding. As noted by the district court, the statute does not require the disclosure to be "necessary" to the resolution of the proceeding, it must only directly affect the resolution of an issue in the proceeding.

Having concluded that 26 U.S.C. §§ 7217 and 7431 are not actionable in this instance, we need not reach the issues surrounding jurisdiction. The judgment of the District Court is AFFIRMED.