33 F.3d 62
 74 A.F.T.R.2d 94-5833, 94-2 USTC P 50,373
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 George Eccles CAINE, Plaintiff-Appellant,
v.
INTERNAL REVENUE SERVICE, an agency of the United States of
America; Nicholas M. Brady, in his official capacity as
Secretary of the United States Department of the Treasury,
Internal Revenue Service; Lois Long, in her individual
capacity and as agent of the United States Department of the
Treasury, Defendants-Appellees.
 No. 93-4141.
 United States Court of Appeals, Tenth Circuit.
 July 27, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before MOORE, Circuit Judge; SETH, Senior Circuit Judge; and DAUGHERTY, Senior District Judge.[2]
 
 
 2
 George Eccles Caine appeals four orders of the district court granting summary judgment to the IRS on all issues in his tax case except one in which the court quieted title to certain property in Caine. In this appeal, Caine seeks to restore his claims under the Omnibus Taxpayer Bill of Rights; his Bivens action based on a denial of due process; his right to a declaratory judgment "declaring certain actions taken by the IRS in relation to its claim of interest in the property to be invalid"; discovery sanctions against the IRS; and a reversal of the denial of attorney fees. We affirm.
 
 
 3
 Because the parties are well acquainted with the facts, we shall not repeat them here. We shall, however, deal with each argument raised by Caine.
 
 The Omnibus Taxpayer Bill of Rights
 
 4
 Essentially, Caine argues the IRS's actions in this case expand the meaning of "taxpayer" as used in 26 U.S.C. 7431-33 to include the "imputed" taxpayer. The district court held Caine was not entitled to relief because he was not "an aggrieved taxpayer." The court concluded 7431 permits suit only by a person whose tax return information was wrongly disclosed, and the so-called tax information released in this case was not from Caine's returns. Recovery under 7432 was denied because Caine was not the person against whom a tax lien was filed. Finally, Caine's 7433 claim was dismissed because he was not a "person against whom the IRS sought to collect taxes and recklessly or intentionally violated a provision of the Code." We agree with that analysis.
 
 
 5
 Caine seeks to avoid these conclusions by contending although IES was primarily liable for the withholding taxes due, the IRS sought to assess Caine a 100% penalty for that liability. Even after the administrative determination he was not personally liable, Caine asserts the IRS's "conduct comprises an extensive campaign" to hold him personally liable for the subject taxes by engaging in repeated unauthorized collection actions. He argues because the IRS attempted to hold Caine liable, he qualifies as the real "taxpayer" in 7431. He does not support that theory with any authority, however.
 
 
 6
 Although Caine cites Mid-South Music Corp. v. Kolak, 756 F.2d 23 (6th Cir.1984), that case is not apposite. Unlike Caine, the plaintiff in Mid-South was an entity whose tax liability was disclosed in a prefiling letter to its investors. The case does not support the imputed benefit theory Caine advocates here, nor does First Western Gov't Sec., Inc. v. United States, 796 F.2d 356 (10th Cir.1986), also cited by Caine. In that case, we held, "Return information requires some nexus between the data or information obtained and the furtherance of obligations controlled by Title 26." Id. at 358.
 
 
 7
 Caine lacks that requisite nexus because, even assuming the tax lien was "return information," it was not information gleaned from Caine's return. His relationship to IES was not as an alter ego, and the information supposedly disclosed was not related to him as a taxpayer within the definition of the statute.
 
 
 8
 For a similar reason, Caine was not entitled to relief under 7432(a) because he did not allege the lien was asserted or wrongfully retained against him. Finally, his complaint averred the efforts to collect the tax owed by IES "constitute an unauthorized collection action in violation of 26 USC Section 7433." He did not contend, however, the IRS was proceeding by way of the lien to collect a tax from him as a taxpayer. Indeed, he asserted the lien was being applied to IES property to enforce payment of a tax owed by IES. Under these circumstances, the district court correctly concluded Caine was not a "taxpayer" within the statutory definition of that term.
 
 Caine's Due Process Claim
 
 9
 Caine contends the court defied its own ruling by eliminating all of his "alternative" remedies and then holding Bivens was unavailable because there were alternative remedies. Conceding a Bivens remedy is only available to remedy "aggregious [sic] misconduct," citing Cameron v. IRS, 773 F.2d 126 (7th 1985), Caine insists the agent's actions in this case fit that description. "In the absence of a remedy under the Omnibus Taxpayer Bill of Rights, Caine has no remedy for the monetary damages which he incurred as a result of Defendants' unwarranted interference with his Property," he argues.
 
 
 10
 Caine stipulated to dismissal of the Fifth Amendment claim against all defendants except Agent Long. There are no facts pled even suggesting Agent Long acted in any way other than in her official capacity, but the district court concluded even were it to construe this as a suit against Agent Long in her individual capacity, Caine is precluded from a Bivens recovery because he had alternative remedies available. The court correctly noted a Bivens recovery is not made available merely because a person has no other remedy against a government agent.
 
 
 11
 In National Commodity & Barter Ass'n v Gibbs, 886 F.2d 1240 (10th Cir.1989), we stated:
 
 
 12
 Although there may be no established mechanism for the recovery of damages against federal authorities for unconstitutional conduct, the unavailability of complete relief does not mandate the creation of a Bivens remedy when other "meaningful safeguards or remedies for the rights of persons situated as [were the plaintiffs]" are available.
 
 
 13
 Id. at 1248. Caine had available to him the remedy provided in 26 U.S.C. 6331 to contest a wrongful levy to determine the rights in property in question or its proceeds. Moreover, 26 U.S.C. 6425 provides another administrative remedy permitting parties to sell property free and clear of a lien and resolve the tax lien in a subsequent proceeding.
 
 
 14
 Caine's Claim for Declaratory Judgment and Attorney Fees
 
 
 15
 Caine insists the declaratory relief he sought was essential for "a full determination of his rights in the Property." He contends, "given the continuous duplicity of Defendants in and prior to this action, the requested declaratory relief is necessary to protect Caine from future unwarranted harassment by Defendants." (emphasis added). Caine argues the IRS's action in revoking the discharge and then contending it has no interest in the property is sufficient to warrant declaratory relief.
 
 
 16
 We fail to see the significance of declaratory judgment in light of the government's concession it had no interest in the property and the district court's subsequent quieting of the title. Moreover, Caine's claim for declaratory judgment did not reach as broadly as the argument he presents here in support of his assertion of error. Indeed, the amended complaint's sixth cause of action sought only an order holding: 1) the tax lien "extinguished"; 2) the revocation certificate "is of no force or effect" and "created [no] interest which the Internal Revenue Service obtained in the property"; 3) the tax lien was inferior to Caine's interest acquired through foreclosure; 4) that any claim the IRS had in the property was "foreclosed out by Plaintiff's purchase of the property at the foreclosure sale." These results were obtained in the quiet title order, making the declaratory judgment claim moot.
 
 
 17
 Caine insists attorney fees are available to him under either 26 U.S.C 7430 or the Equal Access to Justice Act, 28 U.S.C. 2412(d)(1)(A). Caine states he became a prevailing party the instant he added the quiet title claim which the government immediately conceded, illustrating its substantially unjustified position throughout these events. In fact, Caine argues, the court never considered whether Caine should get fees just for having had to file the action at all. Moreover, Caine insists, the primary issue in this case was the assertion of a wrongful interest in this property. He asserts he prevailed on that issue and the court should have awarded his attorney fees.
 
 
 18
 We note initially Caine's declaratory judgment and quiet title claims appeared for the first time in the amended complaint and were not a part of the case before that time. The government conceded it had no interest in the property and consented to a quiet title order in its answer to the amended complaint. We are unable from those facts to determine whether and to what extent the government might have insisted upon claiming an interest in the property prior to that time.
 
 
 19
 Nevertheless, the government correctly notes 7430 contains three prerequisites to an award of attorney fees: 1) that all administrative remedies are exhausted; 2) the requested award constitutes "reasonable litigation costs under 7430(c)(1)"; and 3) the party must prove he is a "prevailing party," as defined by 7430(c)(4)(A). The district court denied relief, holding Caine was not a prevailing party.
 
 
 20
 To be a prevailing party, the litigant must establish he substantially prevailed on the most significant issue presented and that the position of the government was not "substantially justified." Moreover, the government's position must be "unreasonable." Hanson v. Commissioner, 975 F.2d 1150 (5th Cir.1992). Finally, the prevailing party must establish his net worth did not exceed $2 million on the date of filing his complaint.
 
 
 21
 We agree with the district court that even though Caine won an order quieting the title to the property, he was not a prevailing party. First, despite Caine's post hoc argument, the quiet title order was not the most significant issue of this case. Indeed, his present pursuit of the other issues and the ardent manner in which he argues the nature of the injuries he has suffered belie that supposition. In fact, he merely raised the issue, and it was conceded by the government suggesting a total lack of a contest. Second, there is nothing in the record to indicate the government's position on the quiet title issue, let alone whether its position was not substantially justified. Having reached that conclusion, we do not need to consider the government's contention Caine has unduly multiplied his costs by raising non-justiciable claims.
 
 Caine's Claim for Discovery Sanctions
 
 22
 Finally, Caine seeks discovery sanctions against the IRS for intentionally destroying files and documents after Caine requested their production. Caine insists similar conduct by a private party would be soundly condemned. However, the IRS states the only file specifically identified was that with the documentation of Caine's attempt to compromise IES's tax liability. The government states it "inadvertently" destroyed the file "in accordance with normal schedules for the retention and destruction of records."
 
 
 23
 Assuming only for the sake of discussion the district court erred in not imposing sanctions upon the United States for failing to deliver the compromise papers, that error is harmless. Having concluded Caine was not entitled to any relief other than that which he received, we cannot say he was prejudiced by the absence of the missing records.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Honorable Frederick A. Daugherty, Senior District Judge for the United States District Court for the Western, Eastern, and Northern Districts of Oklahoma, sitting by designation